**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAYLEE LYNN HELLER,** | : | **Civil No.  1:23-CV-1104** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN COLVIN,[1]** | : | **(Magistrate Judge Carlson)** |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

In the instant Social Security appeal, the plaintiff invites us to undertake a daunting task. Heller urges us to find at Step 3 of the sequential analysis that governs Social Security appeals that she met all listing requirements and was, therefore, *per se* disabled. Heller argues that we should adopt this course even though no medical expert concluded that her impairments were *per se* disabling, and every expert who opined in this case found that Heller could do some work notwithstanding her impairments.

---

[1]Carolyn Colvin is currently serving as the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn Colvin is substituted as the defendant in this suit.

In considering this Step 3 argument advanced by the plaintiff, we recognize a legal truth: the Supreme Court has underscored for us the limited scope of our substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Beyond this legal truism, we also acknowledge an immutable fact: The medical consensus relied upon by the ALJ in this decision thoroughly rebuts Heller's claim of *per se* disability.

Presented with this record, the ALJ who considered this case concluded that Heller did not meet the exacting disability requirements set at Step 3 of this sequential analysis and denied her claim. After a review of the record, and mindful

2

of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    **Statement of Facts and of the Case**

This is Shaylee Heller's second disability application. Her prior application for disability benefits was denied by an ALJ in August of 2017, (Tr. 70-106), and that decision was affirmed by this Court on March 1, 2021. (Tr. 107-08).

Four months later, on July 2, 2021, Heller filed a second application for child's insurance benefits based on disability, along with an application for child's insurance benefits survivor claim, as well as a Title II application for Disability Insurance Benefits and a Title XVI application for supplemental security income. In all of these applications, Heller alleged disability beginning July 15, 2015, (Tr. 15), due to the following severe emotional impairments: schizophrenia, bipolar disorder, attention-deficit disorder (ADD), oppositional defiant disorder, intellectual disability, post-traumatic stress disorder (PTSD), and seizure disorder. (Tr. 18).

On appeal, Heller contends that the ALJ erred by failing to recognize at Step 3 of the sequential analysis that governs Social Security claims that her emotional

impairments were *per se* disabling. With respect to this issue, the ALJ's decision

denying Heller's claim engaged in the following detailed Step 3 analysis of the

severity of her emotional impairments, stating that:

> The severity of the claimant's mental impairments, considered singly
> and in combination, do not meet or medically equal the criteria of
> listings 12.03, 12.04, 12.05, 12.06, and 12.15. In making this finding,
> the undersigned has considered whether the "paragraph B" criteria
> ("paragraph A or B" criteria of listing 12.05) are satisfied. To satisfy
> the "paragraph B" criteria, the mental impairments must result in one
> extreme limitation or two marked limitations in a broad area of
> functioning. An extreme limitation is the inability to function
> independently, appropriately, or effectively, and on a sustained basis.
> A marked limitation is a seriously limited ability to function
> independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant
> has a moderate limitation. The claimant reported that her impairments
> affect her ability to take her medicine without reminders, prepare meals,
> remember, and follow instructions. However, she also indicated that
> she remains able to shop in stores, by phone, by mail, and by computer,
> count change, help take care of pets, and perform a part-time cleaning
> job two days per week (Exhibits B7E; B11E; Hearing Testimony).
> Mental status examinations have further shown intact memory, despite
> her cognitive deficits and mildly impaired memory during her
> consultative mental status examination (Exhibits B8F; B9F).
> Additionally, State agency psychological consultants and consultative
> psychological examiner indicated that the claimant has a moderate
> limitation in this area (Exhibits B3A; B7A; B8A; B9A; B12A; B14A;
> B9F). As such, the undersigned determines that the claimant has a
> moderate limitation in understanding, remembering, or applying
> information.
>
> In interacting with others, the claimant has a moderate limitation. The
> claimant reported that her impairments affect her ability to get along
> with others and go out alone. However, she also indicated that she

remains able to shop in stores, spend time with others in person, attend church, and perform a part-time cleaning job two days per week (Exhibits B7E; B11E; Hearing Testimony). Mental status examinations have further shown cooperative behavior, despite her depressed mood at times (Exhibits B8F; B9F). Additionally, State agency psychological consultants and consultative psychological examiner indicated that the claimant has a moderate limitation in this area (Exhibits B3A; B7A; B8A; B9A; B12A; B14A; B9F). As such, the undersigned determines that the claimant has a moderate limitation in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant reported that her impairments affect her ability to concentrate, complete tasks, and follow instructions. However, she also indicated that she remains able to shop in stores, by phone, by mail, and by computer, count change, watch TV, read, do crafts, text others, help her mom with housework such as laundry, vacuuming, and dusting, help take care of pets, and perform a part-time cleaning job two days per week (Exhibits B7E; B11E; Hearing Testimony). Mental status examinations have further shown impaired attention and concentration at times, but intact at other times, along with full orientation and alertness (Exhibits B8F; B9F). Additionally, State agency psychological consultants and consultative psychological examiner indicated that the claimant has a moderate limitation in this area (Exhibits B3A; B7A; B8A; B9A; B12A; B14A; B9F). As such, the undersigned determines that the claimant has a moderate limitation in concentrating, persisting, or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. In addition to the above, the claimant reported that her impairments affect her ability to handle stress and changes in routine. However, she also indicated that she remains able to shop in stores, read, go sightseeing, spend time with others in person, attend church, help her mom with housework such as laundry, vacuuming, and dusting, help take care of pets, and perform a part-time cleaning job two days per week (Exhibits B7E; B11E; Hearing Testimony). Mental status examinations have further shown full alertness, cooperative behavior, clean appearance, no abnormal movements, normal speech, reactive affect, fair insight/judgment, and full orientation, despite her

depressed mood and poor insight/judgment at times (Exhibits B8F; B9F; B14F; B20F). Additionally, State agency psychological consultants and consultative psychological examiner indicated that the claimant has a moderate limitation in this area (Exhibits B3A; B7A; B8A; B9A; B12A; B14A; B9F). As such, the undersigned determines that the claimant has a moderate limitation in adapting or managing oneself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria (criteria of listing 12.05) are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria of 12.03, 12.04, 12.06, and 12.15 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria because there is no evidence that the claimant experiences marginal adjustment. Instead, the evidence of record, including statements by the claimant, shows she is able to shop in stores, by phone, by mail, and by computer, count change, watch TV, read, do crafts, go sightseeing, spend time with others in person, text others, attend church, help her mom with housework such as laundry, vacuuming, and dusting, help take care of pets, and perform a parttime cleaning job two days per week (Exhibits B7E; B11E). Additionally, State psychological consultants noted, "Evidence does not establish the presence of the "C Criteria" (Exhibits B3A; B7A; B8A; B9A; B12A; B14A).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Turning back to listing 12.05, this listing is based on the three elements that characterize intellectual disorder: significantly subaverage general

6

intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.

The required level of severity for this disorder is met when the requirements in paragraphs A or B are satisfied.

Paragraph A requires the following:

> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because the evidence does not show significantly subaverage general intellectual functioning, as the claimant remained able to function at a level required to participate in standardized testing of intellectual functioning (Exhibit 19E). Likewise, the evidence does not show significant deficits in adaptive functioning, as the claimant remains able to use the toilet and feed herself with no problem (Exhibits B7E; B11E).

Paragraph B requires the following:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:

>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because her IQ scoring showed a full-scale IQ of 86, which is average-to-low average, and she exhibits moderate limitations in the above areas of mental functioning (Exhibit B19E/13).

(Tr. 20-23).

Thus, in this case the ALJ's Step 3 determination that Heller was not *per se* disabled rested upon multiple pillars, each of which was supported by substantial evidence. At the outset, this determination was supported by the consensus of the medical opinion evidence from state agency and consultative sources, all of whom

8

agreed that Heller's emotional conditions were only moderately impairing. Indeed, on appeal, Heller points us to no countervailing opinion evidence which would support her Step 3 argument. In addition, the ALJ aptly observed that Heller's activities of daily living—which included part-time employment—were inconsistent with a claim that she was completely disabled. The ALJ also noted that while objective IQ testing confirmed some degree of mental impairment, it revealed that Heller's full-scale IQ was in the average to low average range, further bolstering the findings that she was only moderately impaired.

Between Steps 3 and 4, ALJ then fashioned the following residual functional capacity assessment for Heller:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no work at unprotected heights, on ladders, ropes, or scaffolds, and no work around dangerous moving machinery. The claimant is able to carry out detailed but uninvolved instructions to perform simple, routine, and repetitive tasks, involving only simple work-related decisions and occasional workplace changes. The claimant can tolerate frequent interaction with coworkers and supervisors and no interaction with the public. The claimant can tolerate a low level of work pressure defined as work not requiring multitasking or significant independent judgment.

(Tr. 23).

Once again, this RFC determination rested upon a carefully detailed discussion of the plaintiff's clinical history, the medical opinion evidence, and her

activities of daily living. (Tr. 23-28). In particular, the ALJ addressed and analyzed

Heller's most recent treatment records, describing that treatment history in the

following terms:

> A review of the medical evidence of record reveals a history of mood swings, PTSD, symptoms of schizophrenia including audio and visual hallucinations and paranoia, and some anxiety, for which she has treated through outpatient psychiatry visits with Community Services Group (Exhibits B8F; B9F; B20F). Noteworthy, the record shows that the claimant reported to the emergency department in December 2017 and indicated that she was seeing and hearing things (Exhibit B7F/70). Mental status evaluations have shown moderate findings of a depressed mood, but otherwise normal concentration, attention, and memory (Exhibit B8F/14). Periodically, these mental status evaluations have noted poor insight, judgment, and concentration (Exhibit B8F/17, 27). While the record shows that the claimant notes continued issues with depression, she has consistently denied suicidal ideation (Exhibits B3F/2; B7F/26; B8F/64, 67, 70, 73, 76, 79; B9F; B12F/48; B14F/2, 7; B20F/5). Additionally, there does not appear to be any recent issues with regard to any hallucinations, and the claimant noted to her physicians that she was stable on medications without any side effects (Exhibit B14F). In fact, when talking to her primary care physician on November 15, 2021, she noted that with her treatment through behavior services, she was doing well with regard to her schizoaffective disorder (Exhibit B11F/7). As such, this evidence is inconsistent with the claimant's statements about the intensity, persistence, and limiting effects of her symptoms with regards to her schizophrenia and depression.

(Tr. 25).

Having fashioned this RFC for Heller, the ALJ then determined that there

were jobs that existed in significant numbers in the national economy that she could

perform. (Tr. 28-29). Based upon these determinations, the ALJ found that Heller

had not met the exacting standards for adult disability and denied this claim. (Tr. 29-30).

This appeal followed. (Doc. 1). On appeal Heller's principal argument is that the ALJ erred at Step 3 of this disability analysis and should have found, based upon the plaintiff's treatment history, that she was *per se* disabled. This appeal is fully briefed and is, therefore, ripe for resolution. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ in Adult Claims

To receive benefits under the Social Security Act as an adult by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible

11

to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of

the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### B.    <u>Substantial Evidence Review – the Role of this Court</u>

Once the ALJ has rendered a decision, it is our duty to evaluate this ruling judging the ALJ's analysis against familiar and deferential standards of review. When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if

the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)

17

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the

burden of articulation demanded by the courts to enable informed judicial review.

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals addressed the standards of articulation that apply in

this setting. In <u>Hess</u>, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the <u>Hess</u> decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract.

Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### C.    Legal Benchmarks Governing Step 3 of This Sequential Analysis

This dichotomy between the Act's deferential standard of review and caselaw's requirement that ALJs sufficiently articulate their findings to permit meaningful judicial review is particularly acute at Step 3 of this disability evaluation process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. § 416.920(d); Burnett, 220 F.3d

at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under step three, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F. Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014), *available at* Westlaw SSFEDCT. However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is

beyond meaningful judicial review." <u>Burnett</u>, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." <u>Jones</u>, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," <u>id</u>., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is ... beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. <u>Burnett</u>, 220 F.3d at 119.

### D.    <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," <u>Pierce</u>, 487 U.S. at 565, but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Biestek</u>, 139 S. Ct. at 1154. Judged against these deferential standards of review, we find that substantial evidence supported the

ALJ's decision that Heller had not satisfied the criteria for disability at Step 3 of this analytical process.

On this score, Heller's burden of proof is particularly exacting. Not only must she overcome the deferential standard of review which generally applies in Social Security appeals, but at Step 3 a plaintiff also bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Judged by these exacting standards, we find that the ALJ correctly concluded that Heller's emotional impairments, while significant, did not meet any listing requirements. This ALJ determination was supported by substantial evidence including: the medical opinion consensus which rated her emotional conditions as only moderately impairing; Heller's activities of daily living, which included part-time work; and IQ testing which rated her full-scale IQ in the average to low average range. Given this evidence, which fully supported the ALJ's Step 3 analysis and subsequent decision that Heller could perform some work, it cannot be said that Heller has shown that she met all of the pertinent listing requirements and was *per se* disabled.

Further, the simple tasks RFC fashioned by the ALJ met the evidentiary standards set by law, and that RFC was sufficiently articulated in the decision denying this claim. As we have noted, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d at 211. In this regard, an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). Here, the ALJ's decision correctly identified the plaintiff's moderate mental impairments in certain spheres of functioning, based upon medical and clinical evidence as well as Heller's activities of daily living. Having made these findings, the ALJ then limited Heller:

> [T]o perform simple, routine, and repetitive tasks, involving only simple work-related decisions and occasional workplace changes. The claimant can tolerate frequent interaction with coworkers and supervisors and no interaction with the public. The claimant can tolerate a low level of work pressure defined as work not requiring multitasking or significant independent judgment.

(Tr. 23). This analysis, which weds a simple tasks RFC to the medical evidence and claimant's activities of daily living, is all that the law requires. There was no error on this score.

While Heller asserts that her treatment notes should have received greater consideration in this Step 3 evaluation, we note that this evidence was considered and evaluated by the ALJ, but these treatment notes did not opine regarding whether Heller met all of the pertinent listing requirements. Moreover, every expert who opined in this matter found that Heller had not satisfied these listing requirements. Thus, at bottom, it appears that the plaintiff is requesting that this court re-weigh the medical evidence and subjective testimony. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record.") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla,

Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate for the purpose of further assessing this evidence.

In sum, on its merits, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case this decision will be affirmed.

## IV.    <u>**Conclusion**</u>

For the foregoing reasons, the decision of the Commissioner in this case will

be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January 27, 2025